The next case for argument this morning is 21-1883, Wallace v. Baldwin. Good morning Mr. Montroy Good morning. May it please the court, my name is Chris Montroy and I represent plaintiff appellants Corrie Wallace and Rafael Santos, Jr. This appeal concerns the district court's entry of summary judgment on the issue of preliminary question. This comes to us on the entry of an order under Rule 54B and I can understand I think an order under 54B vis-a-vis Mr. Santos' claim because it seems to be a pretty clean ruling that he as an individual failed to exhaust. I am baffled about what Wallace is doing here. His things are going on in the district court. Everybody seems to agree that he did exhaust at least something vis-a-vis at least some defendants. And so I'm not sure that this is a proper 54B order. In this case, certain defendants including Mr. . . . for Wallace there were certain defendants that were dismissed. Well, I get that, but Wallace's case is continuing and he does not suffer from what I see as the central issue in this case. He doesn't suffer in anywhere near the same way from the issues about exhaustion that we have before us vis-a-vis Mr. Santos and I don't know whether we can fix the order or whether we're supposed to ask the district court to but the idea of 54B is that you can carve off a completely independent claim or a completely independent party. Sometimes it's a little of both, but you don't bring up something that's actually still intertwined with what's going on at the district court level. It's plain disposition that the individual defendants that were dismissed from Mr. Wallace's Mr. Wallace's claims against them were clean and separate from the other ongoing litigation before the district court. Well, I'll take that answer and let you do the rest of your argument, but I'm concerned about this. Okay. The primary issues before this court are whether administrative remedies were unavailable, whether the remedies were vicariously exhausted, whether defendants satisfied their burden of proof, whether exhaustion as a defense was waived, and whether the district court abused its discretion by disallowing discovery concerning the issue of exhaustion. Could I ask you a question about Ross, about the Supreme Court case? Can you say to other circuits that have held that a grievance process like this is a dead end under Ross? Other examples? Are there other circuits? I mean, I can't find very . . . Now, I can find cases where the circuit courts have sent back to the district court to determine whether or not there's a dead end, but I don't see a lot of circuit courts holding . . . You know, there's a fine line, right, between what is a dead end and what would just be futile for a litigant or for a prisoner to pursue. That's correct. It's plaintiff's position that a dead end . . . well, plaintiffs aren't asserting that there is a dead end here. Rather, what they're asserting is that the defendant and Menard officials were capable of remedying the circumstances in the North 1 and North 2 cells, but they chose not to. And if . . . But that means it's unavailable, right? That's correct. Your argument is that it's unavailable because they're consistently choosing not to, right? That is correct. And the way I understand it is you need discovery to prove that. Yes. You don't have it now, right? I don't see anything in the record from any Menard official that says, we systematically refuse to consider grievances on the cell size because we've already considered that a hundred times and rejected it every time, and the cell size is not going to change. We don't consider these anymore. That would be a dead end. Yes. That's not in the record. Well, plaintiffs take the position that further discovery is not necessarily . . . that the . . . it is not absolutely necessary because there is a flood. What there is, is there's a flood of cell size limit litigation in the Southern District of Illinois, and cases continue to be filed in that. And I cited for the court over 12 cell size cases that were nearly identical to the claims made by . . . Do we know, though . . . I mean, there's another aspect of this that has got me thinking. Clearly there are a lot of cell size things. You make the point, and I don't dispute it, that the cell size issue has been a problem for a long time at Menard. But the exhaustion jurisprudence of the Supreme Court says the inmate isn't necessarily entitled to precisely the remedy that he or she has asked for. And so, if the remedy that you think . . . if you just have a binary idea that either the status quo remains unchanged, or somebody builds several new wings at Menard so that we don't have to put two people in the cells and the problem is solved, that's likely not going to happen. Not too soon, and Menard, of course, has not done that over the years. There are intermediate remedies that sometimes address the kinds of problems, at least in part. And the Supreme Court has said that's why you have to exhaust. You've got to allow the prison to explore a variety of options, maybe more time out of the cell, maybe, you know, redesigned bunk beds. I don't know. Just different kinds of things short of actually just building the new wing. In this case, I don't believe that those sort of administrative remedies would cure the issue, given the amount of time. But do we know for sure they've never been tried, even, with all of these grievances over the years? Now, I will explain to you, since the case was filed, and only after the case was filed, did Menard scale back on their double bunking in the North 1 and North 2 buildings. So why isn't that an available remedy, then? What did you say? Why wouldn't that satisfy an available remedy, that they're doing something? That only occurred after the plaintiffs filed their lawsuit. So they had never scaled back on it in the past? Not to my knowledge, no. But what difference does that make, as to exhaustion? I mean, I think Judge Wood's point is, the point of the grievance process is Mr. Santos files a grievance, and there's some remedy available that maybe he'll be transferred to a different prison, maybe he'll be put in an individual cell. But there's some remedy available to him if he files a grievance. I mean, the fact of the matter is, the fact that Menard has scaled back on the double bunking in North 1 and North 2 buildings, but they continue to do it, shows that there is an available remedy. The fact that they did not do that until after plaintiffs filed a putative class action lawsuit that indicates that they chose, that they were unwilling to provide that sort of relief. And thus, the remedies were unavailable. But I thought you said they provided it. After plaintiffs filed a class action lawsuit. But I don't see why that timing is so critical. I mean, again, you are asking, I think, for two things. One is that if enough other people have filed the exact same grievance, there comes a time that the next individual doesn't have to file it. Outside the context of a certified class action, I'm not familiar with that happening. And in fact, the Supreme Court has said over and over, you just have to go through the motions. You've got to file the grievance, even if you think it's futile, even if you don't think anything's going to happen, and it's an individualized process. You would have to show, this gets back to the original thing you were talking about with Judge Kirsch, I think you'd have to show that there is somehow a de facto exemption in the Menard grievance policy for cell size. And there are other exemptions in the policy, not this one, though. And so I think that'd be a heavy lift. But I think you were trying to say, well, because nobody ever does anything, in effect, they just throw them all in the wastebasket. But we don't have any evidence of that. Well, to begin with, the timing is important. Because if the remedies were available after they filed suit, these remedies need to be available prior to filing suit. Because under Section 1997E, the purpose of that was to try to avoid litigation. If they provide the remedies after the lawsuit, those remedies were still unavailable in the time They weren't being given. What structurally made them unavailable because the lawsuit was filed or not? Defendants' unwillingness to change the policy. They continued to, throughout the entirety of the Turley litigation, and the Turley litigation specifically concerned the cell size in Menard North 1 buildings, which is identical to the cell sizes of North 2 buildings as well. Throughout the entirety of that litigation, Menard officials refused to take any steps to provide relief to claimants stating that there were grievances that the cells were too small. Have they ever provided relief to an inmate who filed a complaint or a grievance about being double-celled? Prior to filing suit. Prior to filing this suit. Prior to my clients filing this suit, I'm not aware of any specific situation. But there may have been situations. Oh, I take that back. There was one situation where an inmate said that he was going to kill his roommate unless he was moved. And he killed his roommate and then was given a single cell. But other than that, I'm unaware of Menard officials providing any relief to these grievances. I want to go back to a response you made to Judge Kirsch's question. I thought you were pursuing a dead-end exception under Ross. I thought your argument was that the remedies are not available here. Yes. Because there's a dead-end. And when Judge Kirsch asked you that, you said you were not arguing the Ross, that's language from Ross, the dead-end exception. Can you please clarify that? Sure. Perhaps I was imprecise there. In Ross v. Blake, the court says that remedies are unavailable if grievances only serve as a dead-end or if officials are constantly unwilling to act. So my argument utilized the language of Menard's officials' unwillingness rather than saying a dead-end, which, as Judge Kirsch noted, is somewhat similar to futility, which is not an exception under 1997E. During this oral argument, Plaintiff first focuses on the first two arguments concerning the unavailability of remedies and vicarious exhaustion, because the court's blessing on one of these two arguments is necessary for the trial court to have authority to grant class-wide relief. Plaintiff's first and foremost argument against the entry of summary judgment was that remedies were unavailable. The district court did not address this in its opinion, and defendants acquiesced to this point by failing to respond to their argument in their brief. Plaintiff's argument is two-pronged. First, Plaintiff asked this court to find that the remedies were unavailable under Section 1997E because Menard officials were consistently unwilling to provide any relief to aggrieved inmates. And does it have to be that the ultimate relief you're seeking is unavailable, or that the administrative process is unavailable? It can actually be either. Courts have ruled that if the administrative process is not available, that is also considered an unavailability of remedies. But in this case, the administrative process was unavailable. But Menard officials, knowing that these cells were too small for two grown men, were simply unwilling to change the policy. But it seems as if the process was available. Yes. Yes. That's correct. Inmates are only required to satisfy those remedies that are available under Section 1997EA. And as the Supreme Court explained in Ross v. Blake, remedies are unavailable when officials are consistently unwilling to provide relief. Defendant did not respond to this argument because they cannot rebut the fact that Menard officials systematically rejected cell-size grievances concerning North 1 and 2 buildings throughout the Turley litigation. Mr. Montrey, you are into your rebuttal time. It's up to you, but if you want to save some, that may be a good time. I will wait. Thank you. Good morning, Ms. Shrove. Good morning. Good morning. I may please the Court. My name is Alexandrina Shrove, Assistant Attorney General on behalf of Defendants Appellees. The Prison Litigation Reform Act, or PLRA, requires that inmates individually grieve their issues at their respective institutions in order to fully exhaust their administrative remedies prior to filing suit. And you've conceded, haven't you, that Mr. Wallace did just that. He successfully exhausted the grievance process based on that January 12, 2018 grievance? Correct, Your Honor. So what's he doing here? Your Honor, as my opposing counsel mentioned in the first half of the argument, that was not an issue that was before the briefing, or rather, that was not an issue that was mentioned in the briefing. And so if Your Honors have an issue with Mr. Wallace currently being in the case, we would be happy to file a supplemental brief or letter addressing his arguments and whether or not he should be in this case. It goes to appellate jurisdiction, so I think some examination of this is appropriate. And as I mentioned, Your Honors, we would be happy to file a supplemental brief or letter addressing that. Exhaustion under the PLRA is mandatory. And while inmates need not exhaust where an administrative remedy is unavailable, the text plain language suggests no limits on an inmate's obligation to exhaust. Can I ask you a question on Mr. Santos' testimony? Let's say he didn't exhaust, right? He has this testimony at the hearing where he says, I tried to exhaust. What proof did the state submit to meet its burden that he didn't exhaust or that he failed to try to exhaust? Your Honor, I think what's important about that question is the standard of review for the district court's decision with respect to the Pavey hearing. And it's whether or not the district court clearly erred when it found incredible Mr. Santos' testimony that he did in fact file that June 21st grievance in the manner and when he said that he did. And here, defendants presented evidence that there was no grievances filed by Mr. Santos. What was that evidence? That's what I'm asking. Was it just the cross-examination of Mr. Santos or was there more? No, Your Honor, there was more evidence. Defendants submitted both the grievance log of Mr. Santos that showed that he did not file any grievances in the entirety of 2017. But it showed another grievance that he had filed, right, at an earlier time? Correct, Your Honor. It showed that he had filed several grievances in 2015 and then also a subsequent grievance in 2019, demonstrating that had Mr. Santos filed the grievance when he said that he did, that log would have reflected that. And in addition, Mr. Santos claims that he filed several follow-up letters with the warden of Menard, but defendants also submitted evidence of the warden's kite log, which shows all of the correspondence that's received by the warden's office. And that kite log demonstrated that Mr. Santos had filed two correspondences during 2017, but neither one of them was with respect to this cell size issue. Can I ask you this question, though? I mean, I take it your position, but correct me if I'm wrong, is if the district court's conclusion after the Pavey hearing is, you know, entitled to deference, clear our review, whatever, so he failed to exhaust, would it be the state's position that the availability of any kind of relief through the grievance process drops out? Because what I'm worried about is looking at this de facto dead-end argument that Mr. Santos is making, it seems to me we don't require people to file grievances if the grievance procedure doesn't touch on that topic. We had a case recently. The grievance procedure doesn't cover employment disputes. You don't have to exhaust. So wouldn't it make the results of the Pavey hearing irrelevant? Your Honor, I think what's important about this argument, this dead-end unavailability argument, is that Mr. Santos is attempting to rely on the grievances filed by separate inmates and completely third-party. Here's the issue. Suppose there was, you know, the state had produced, I realize this isn't all on record, but suppose the state had produced records of every single grievance that it has handled since Turley, and it shows that no grievance dealing with cell size has ever been treated at all on the merits. They all just get thrown away. So you would see from that long-standing pattern that, although in name the grievance procedure may cover this, in reality it doesn't. And I think that's more than just relying on other people's grievances. That's looking at the institution's practice over time. Your Honor, that may well be the case in a different case, but that's simply not the case that we have here before us today. So what evidence do we have that Menard has ever granted relief to a grievance about the cell size? Your Honor, we don't have that evidence necessarily in the record in this case because Mr. Santos did not individually grieve his issues with these cell sizes. And as you have mentioned, the Supreme Court— But wouldn't that go to the unavailability then? I mean, I think the question is separate. In Ross and in Booth, the Supreme Court has talked about, separate and apart from exhausting the administrative remedies and filing the grievances, that there's this presupposition that some redress for the alleged wrong is actually available at the institution. And if that redress is not available, if the underlying remedy being sought isn't available, that there's no need to exhaust. Again, Your Honor, that may be a question for down the line. But currently, as you mentioned, the Supreme Court in Ross has repeatedly and explicitly said that there is no special circumstances exception to the PLRA's exhaustion requirement. But there is a dead-end exception. So if the grievance procedure really just doesn't cover this, that seems to go beyond futility. It's a question of, is there a grievance procedure for these double-bunking problems? As Your Honor mentioned, these inmates need to go through the motions in order to exhaust under this Court's and the Supreme Court's jurisprudence in Ross. But to an degree, they don't have to go through the motions if the thing they're complaining about falls within the list of exemptions from the grievance process that the state recognizes. Your Honor, an inmate is not required to exhaust an unavailable remedy. But as opposing counsel mentioned, there are two different avenues to show that a remedy is unavailable. And here, nobody is disputing that they were capable of filing these grievances. And so as I mentioned, it may be a question for a later date as to whether or not these grievances are, as opposing counsel suggests, systematically being denied. But that's not the question here. Counterfactually, let's suppose Menard or the state of Illinois in the Department of Corrections grievance process had some section exemptions, you know, no inmate needs to grieve the following things, list, list, list. And suppose they put medical conditions there because they just thought, look, we're not going to put exhaustion in the way of that. We'll just deal with these cases on the merits because the merits standards require deliberate indifference and we're wasting a lot of time on exhaustion. Well, you wouldn't require an inmate to file a grievance about a medical procedure then because the policy would say there is no need to file to exhaust with respect to medical. And then the next question is, what if it's de facto? I mean, actually, we even have this with Monel cases. Sometimes you have an express policy of the municipality. Sometimes you just have a long pattern of behavior which shows an implied policy. And if Menard has an implied exception to double bunking, then why require people? That's the Ross category, it seems to me. That's the Ross just not available. Why isn't that this case? Your Honor, as I mentioned, I think that it may be a question for a later date, but that's not what plaintiffs are attempting to argue here. They're attempting to rely on a grievance filed by a separate inmate and completely separate third-party litigation. Can I ask you a question? I'm interested in this later date thing, but my question is, is the later date discovery in this case? And here's why I say this, okay? Judge Wood is saying there's this Illinois Code provision that the plaintiff cites that says grievances shall be reviewed and written response provided at the offender, et cetera, but they should be treated as no-merit grievances and returned if we've previously addressed the issue for which there's no additional information. Now, discovery, I think, in this case would show how Menard has treated these grievances or similar grievances. And if Menard has treated them as no-merit grievances, then I think under Ross, the plaintiff can say, aha, here it is. It's a no-merit grievance. It's been returned because there's no additional information, and so the time to litigate is now. That would be a dead end, the application of the statute. So why is the time not now? Why is it not discovery in this litigation to determine how Menard has applied that Illinois statute, which the plaintiff has relied upon? Your Honor, it's not now. The time is not now to determine that because Mr. Santo simply did not file a grievance in this matter. And before we even get to— But my point would be is he doesn't have to. If Menard has treated this statute the way I proposed as a no-merit grievance, then under Ross, he doesn't have to exhaust, and he doesn't even have to file a grievance. He can just go straight to litigation. And I think the purpose is there's one central issue, right? The cell size. That can be handled in litigation without a million grievances and a hundred different lawsuits. It can be dealt with once. Well, Your Honor, I think that what you're suggesting then is perhaps a class action. And again, that's not what we have here. No, I'm not suggesting that. I'm just—the remedy could be as to Santos, and then it could be applied to other inmates as Menard sees fit, or maybe it could result in a class action. But it doesn't have to be a class action. And we don't have to underestimate the value of precedent. I mean, not all things are class actions. Precedent is still important. Yes, and Your Honor, I think what's important to remember is that we're never going to get to the point of looking at discovery for the alleged unavailability of these grievances because of the remedy unless we have first a grievance filed. But how do you get around the language in Ross with that argument? The court in Roth said an administrative procedure is unavailable when, despite what regulations or guidance materials may promise, it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates. That suggests that you fall within the 1997e unavailability simply because there's a dead end apart from the inmate initiating any kind of grievance through the procedures. What I think is missing from that point, Your Honor, is that all of the cases that plaintiff rely on to support this argument, including Ross, is that only involved individual plaintiffs, that individual plaintiffs need not continually grieve the same issue and not receive a response or not receive the remedy that they're seeking in order to resolve it. That's interesting. That's what I thought too when I read it. But is that how Menard has applied it? Is that how Menard has interpreted it? In other words, if Mr. Santos files a grievance or Mr. Wallace files a grievance, is there evidence that Menard has said, ah, Wallace, yours is a no merit grievance because Santos filed the exact same grievance four months ago and we've already determined it? I think you have a good point there if that's how Menard has applied the statute. I'm not sure whether it means the same. That's how I read it the first time. And I thought, well, how does Menard apply it? Well, Your Honor, that evidence simply isn't in the record here. So why wouldn't that be required then for a payee hearing? Because the burden is on you to prove that administrative remedies were not exhausted. And if we have this question of unavailability. Because if the individuals themselves need to be the one who grieve these issues, and as I mentioned, all of the cases that plaintiffs cite to rely on a single individual inmate continually grieving the same issue. And in that respect, the administrative remedies may have been unavailable. But what plaintiffs are attempting to do here today is to rely on the grievances filed by separate inmates and completely separate third-party litigation here to support their claim that Mr. Santos has exhausted his administrative remedies. So you're saying it has to be shown that it's unavailable to that particular individual and the individual can't rely on any other grievances that didn't result in action? Or to just sort of sharpen that, it seems to be your point that even if the course of there's de facto no grievable problem about double bunking, the individual has to file a grievance anyway. And it's the same as if Menard just issued a new rule that said we're not going to take grievances on double bunking. And an inmate in the face of that, in your view, seems to be required to file a grievance anyway. Correct, Your Honor. Outside of the class action context, an individual inmate needs to personally grieve his issues with the institution. But here's the problem. You're at the individual conduct level. And I think we're trying to explore the rule level. What's the rule at Menard? And is there a course of conduct that has amounted to a rule over time? Because if Menard just won't take these grievances, then why aren't you in the dead end, unavailability branch of Ross? Your Honor, that, as I mentioned, you're asking us, you know, take my word for it, Menard's really looking at all of them. But we don't know that. Well, Your Honor, I believe that the December 2018 grievance that Mr. Santos filed did relate to his cell size conditions as well as Mr. Wallace's grievance related to his cell size conditions as well. So it's not that there is a systematic denial of all of these across the board. We can look at those grievances themselves to see that they are being reviewed. Thank you. Thank you. Mr. Montroy. Howdy. I want to quickly address some of the issues that this court has brought up. First of all, Butler, Hutchinson, and Jones, and Jeffries were dismissed from Wallace's claims, and these individuals were different persons that operated during different time periods. Where can I find the Wallace arguments in your brief? The Wallace arguments in my brief? Yeah. I don't even know what the issues are with respect to Wallace. Well, Wallace's arguments are the same as Santos with respect to the unavailability of remedies as well as... But he exhausted. What'd you say? But he exhausted. Wallace exhausted. He exhausted it. He's moving forward. He exhausted it against those individuals that were working at the time that he made his grievance. Defendants said that after the time period, persons that were working after the 60-day time period where they made their... Yeah, I know what you're saying. You don't have to take your time with this. Oh, okay. But you also mentioned that defendants might not have satisfied the burden of proof for the documents that... For producing documents in relation to the defense of exhaustion. Defendants did not submit any testimony or documents that any grievance would have been included in the records that they produced, and that was part of their burden. And lastly, is there any grievance procedure? That's what Judge Wood asked. Under Illinois law, the answer is no grievance procedure that can provide relief because redundant grievances are deemed no merit grievances and not entitled to relief under Title 20, Section 504.830. Thank you. All right. Thank you. Case will be taken under advisement.